OPINION
AMBRO, Circuit Judge.
Stacie Blakeslee, Executrix of the Estate of Robert Young, brought a claim *250 under 42 U.S.C. § 1983 against the officials of Clinton County Correctional Facility (CCCF) in Pennsylvania after Young committed suicide while on suicide watch at CCCF. The District Court dismissed the individual John Doe defendants pursuant to Federal Rule of Civil Procedure 21 and granted the motion for summary judgment, of the remaining defendants. Blak-eslee appeals both rulings and we affirm.[1]
I.
On July 11, 2005, Young was transferred from Mercer County Jail to CCCF. One month later, he attempted suicide by slashing his wrists with a razor. In accord with prison protocol, the responding guard called a “code four” medical emergency and sent Young to a local hospital for treatment.
Young returned to CCCF and was placed on “15 minute alert watch.” He was relocated to the restricted housing unit and kept in a restraint chair for his own safety. After approximately one day in the chair, Young complained of being “near froze,” so the attending guard draped a thin blanket over him. Soon after, Young asked to be relocated to a cell so that he could lie down and warm up. CCCF Policy 300-23 requires inmates on suicide watch to be housed in one of two specialized single-bed cells. At the time of Young’s request, both of these cells were occupied, so the CCCF guard led Young to a cell with bunk beds and left him with the blanket. The guards checked on Young every 15 minutes, as required by Policy 300-23. Approximately five hours after being placed in the cell, Young hanged himself from the bunk bed ladder using the blanket. He was not dead when found, but died from his injuries the following day.
II.
Prior to ruling on the defendants’ summary judgment motion, the District Court dismissed five unnamed John Doe defendants pursuant to Federal Rule of Civil Procedure 21. It provides that “on motion or on its own, the court may at any time, on just terms, add or drop a party.” Fed.R.Civ.P. 21. Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. See Klingler v. Yamaha Motor Corp., U.S.A., 738 F.Supp. 898, 910 (E.D.Pa.1990). If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed. See Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D.Pa.1990) (“Fictitious parties must eventually be dismissed ... if discovery yields no identities.”). We review the District Court’s decision to drop parties under Rule 21 for an abuse of discretion. “Under this standard, we must affirm the District Court’s ruling unless we are left with a definite and firm conviction that the trial court committed a clear error of judgment.” DirecTV, Inc. v. Leto, 467 F.3d 842, 844 (3d Cir.2006) (quoting Letherer v. Alger Group, L.L.C., 328 F.3d 262, 266 (6th Cir.2003)).
Blakeslee had approximately ten months of discovery to allow her to identify the individual John Doe defendants and thereafter to amend her complaint. By her own admission, she conducted extensive discovery, including a “wide range of depositions from all positions of the officers, employees, and related personnel” at CCCF. Blakeslee v. Clinton County, No. 07-CV-1364, 2008 WL 4372924, at *6 (M.D.Pa. Sept. 22, 2008). In light of these facts, we affirm the District Court’s dismissal of the *251 John Doe defendants, as nothing before us hints that this decision was an abuse of discretion. See Adams v. City of Camden, 461 F.Supp.2d 263, 271 (D.N.J.2006) (holding that, after a reasonable period of discovery has passed, “[i]t is appropriate, before proceeding to trial, to eliminate [the] fictitious defendants from [an] action under Fed.R.Civ.P. 21.”); see also Hindes v. F.D.I.C., 137 F.3d 148, 155 (3d Cir.1998).
III.
We have plenary review over the District Court’s grant of summary judgment. See Atkinson v. LaFayette College, 460 F.3d 447, 451 (3d Cir.2006). Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted if the record establishes “that there is no genuine issue as to any material fact and that the mov-ant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Any contested facts will be resolved in favor of the nonmoving party and we may affirm or vacate the District Court’s decision “on any ground supported by the record.” Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also DL Resources, Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 216 (3d Cir.2007).
Blakeslee argues, as she did before the District Court, that Clinton County is liable under § 1983 because training is inadequate at its Correctional Facility regarding the identification and prevention of inmate suicides. A municipality may be liable when its “policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the ‘moving force’ behind the constitutional tort of one [of] its employees.” Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir.1991) (quoting Polk County v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). “Only where a municipality’s failure to train its employees in relevant respect evidences a ‘deliberate indifference’ to the rights of its inhabitants can such a shortcoming be properly thought of as a city ‘policy or custom’ that is actionable under § 1983.” City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); see Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir.2005). A plaintiff in a prison suicide case has the burden of establishing that the “deficiency in training actually caused the [prison guards’] indifference to [the prisoner’s] medical needs.” Harris, 489 U.S. at 391, 109 S.Ct. 1197.
Viewing the evidence in the light most favorable to Blakeslee, she has failed to demonstrate that CCCF training was deliberately indifferent.[2] The acts of placing Young in a cell with bunk beds and leaving him with a blanket, even if improper, do not alter the failure to show a disputed issue of material fact on the municipal liability claim. A guard’s mistake does not show inadequate training or supervision for a claim brought under § 1983. See id. at 391, 109 S.Ct. 1197 (“And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.”); see also Gast v. Singleton, 402 F.Supp.2d 794, 799 (S.D.Tex.2005) (“A mistake by a police officer does not establish the inadequacy of a *252 city’s training program,” as required to hold the city liable under § 1983 for inadequate training.). As such, Blakeslee has not established any causal connection between the actions taken by CCCF in the course of its official training and Young’s suicide attempt and resulting death. See Blakeslee, 2008 WL 4372924, at *6 (“To sustain a claim based on a failure to train theory, ‘the identified deficiency in the training program must be closely related to the ultimate constitutional injury,’ and the plaintiff must ‘prove that the deficiency in training actually caused the constitutional violation, ie., the police custodian’s indifference to her medical needs.’ ” (quoting Harris, 489 U.S. at 391, 109 S.Ct. 1197, and Colburn, 946 F.2d at 1028)).
Blakeslee also named four individual employees of CCCF as defendants.[3] Although she doesn’t specify, we presume that these defendants were named “on the theory that they are the municipal policymakers responsible for establishing and maintaining [CCCF’s] allegedly unconstitutional policies and training.” See Blakeslee, 2008 WL 4372924, at *6; Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Because these policies and training are not unconstitutional, the individual defendants are entitled to summary judgment for the same reasons as Clinton County.[4]
Accordingly, we affirm the District Court.

. We have jurisdiction pursuant to 28 U.S.C. § 1291.

. Even Blakeslee's expert report concluded that "there [was] nothing in the record which would demonstrate that [the officers in charge of Young were] indifferent to his care and safety,” and that "staff training at CCCF is conducted in accordance with state law, ACA [American Correctional Association] standards and practices in the industry.” The District Court’s summary judgment opinion contains an extensive discussion of CCCF policies and training. See 2008 WL 4372924, at *6.

. Warden Thomas Duran and Clinton County Commissioners Thomas Bossert, Harold Yost, and Richard Kyle.

. If Blakeslee intended to assert any other theory of individual liability, her claim still fails because she has not alleged that any of these defendants were personally involved in Young's suicide. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005) ("An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing.”) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (internal punctuation omitted).